UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN HOIT,

                              Plaintiff,                    1:15-CV-0134
                                                           (GTS/CFH)
v.

CAPITAL DISTRICT TRANSPORTATION
AUTHORITY; CARM BASILE; STEVE
WAXMAN; LANCE ZARCONE; JUAN BAEZ;
TONY CLANTON; and FRANK MANCINI,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF ELMER R. KEACH, III, P.C.        ELMER R. KEACH, III, ESQ.
   Counsel for Plaintiff                        MARIA K. DYSON, ESQ.
One Pine West Plaza, Suite 109
Albany, New York 12205

O'CONNOR, O'CONNOR, BRESEE & FIRST, P.C.        DENNIS A. FIRST, ESQ.
   Counsel for Defendants Capital Transp. Auth.,  MARGARET E. DUNHAM, ESQ.
   Carm Basile, Steve Waxman, and Lance Zarcone
20 Corporate Woods Blvd.
Albany, New York 12211

JUAN BAEZ
   Defendant, *Pro Se*

GLEASON, DUNN, WALSH & O'SHEA                   LISA F. JOSLIN, ESQ.
   Counsel for Defendants Tony Clanton and      RICHARD C. REILLY, ESQ.
   Frank Mancini
40 Beaver Street
Albany, New York 12207

GLENN T. SUDDABY, Chief United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this civil rights action filed by Kevin Hoit ("Plaintiff") against Capital District Transportation Authority ("CDTA"), Carm Basile, Steve Waxman, Lance Zarcone (collectively "CDTA Defendants"), Tony Clanton, Frank Mancini, and Juan Baez, are the CDTA Defendants' and Clanton/Mancini Defendants' respective motions to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. Nos. 27, 29). For the reasons set forth below, Defendants' motions are granted in part and denied in part.

## I.    RELEVANT BACKGROUND

Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows. On November 7, 2013, Plaintiff, a mechanic employed by CDTA, was working his last shift at the CDTA after being hired for a position at another agency. (Dkt. No. 22, ¶ 13 [Pl.'s Am. Compl.].) On that day, Plaintiff was changing an AC compressor on a CDTA bus. (*Id.*) At approximately 7:00 pm, Plaintiff felt someone grab his shoulder hard and, when he turned, he saw that it was his co-worker, Defendant Clanton. (*Id.*) In response, Plaintiff yelled at Defendant Clanton to leave him alone and tried to pull away from Clanton but Clanton continued to hold him aggressively. (*Id.*, ¶ 14.) Plaintiff then attempted to run away from Defendant Clanton but Clanton chased after him. (*Id.*) Defendant Clanton is approximately 6 feet tall, weighs 300 pounds and is substantially larger than Plaintiff. (*Id.*) Defendant Clanton was able to catch Plaintiff at which point he picked him up in the air, dropped him face down on the ground, and pinned him to the ground on his stomach. (*Id.*) Defendant Clanton then grabbed Plaintiff's arms and forced them behind his back. (*Id.*, ¶ 15.) During this time, Plaintiff repeatedly screamed at Defendant Clanton, telling him to let him go. (*Id.*)

Thereafter, Plaintiff observed his supervisor, Defendant Baez, approach them. (*Id.*, ¶ 16.)

Defendant Baez was laughing and told Plaintiff that he "had a going away present for him." (*Id.*)

Defendant Baez then dropped his pants and got on his knees in front of Plaintiff's head. (*Id.*)

Defendant Baez then manipulated his genitals and placed his testicles on the back of Plaintiff's

head, attempting to subject Plaintiff to what Plaintiff calls "tea bagging." (*Id.*) "Tea-bagging"

has been defined as a sexual act that involves an individual placing his testicles on the face of

head of another person.[1] (*Id.*) In addition, Defendant Baez placed his unclothed penis on

Plaintiff's head. (*Id.*) Defendant Baez stayed in that position for several minutes, laughing and

allowing other employees, including another supervisor, Defendant Mancini, to take pictures of

the incident. (*Id.*) During this time, Plaintiff repeatedly tried to break free of Defendant

Clanton's hold but was unable to. (*Id.*) Eventually, Defendants released Plaintiff and he angrily

walked out of the garage. (*Id.*)

News of this incident spread beyond the CDTA employees who had observed the event.

(*Id.*, ¶ 17.) Indeed, the next day, several CDTA employees, some of whom were employed at

CDTA garages in different counties, called Plaintiff to let him know that they had heard of, and

had been sent pictures of, him being tea-bagged. (*Id.*) Plaintiff also saw that a picture of the

incident had been posted to Facebook by another CDTA bus driver. (*Id.*) Several months after

the incident, Plaintiff's stepfather, who is employed by the Metropolitan Transportation

Authority in New York City, told him that news of the event had spread there as well. (*Id.*)

---

[1] *See*, *e.g.*, *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 161 (2d Cir. 2006) ("Tea-bagging is a hazing act–indeed a form of sexual assault–during which the victim is pinned down on the floor by several [people] while another [person] rubs his genitalia in the victim's face."); *Tea bagging*, Urban Dictionary, http://www.urbandictionary.com/define.php?term=teabagging (last visited June 6, 2016) (defining "tea-bagging" as "the act of lowering one's [testicles] onto someone's face").

This is not the first time that CDTA employees had engaged in inappropriate sexual conduct. (*Id.*, ¶ 20.) There are several other instances in which CDTA employees, including Defendants Baez and Clanton, engaged in similar conduct while at work. (*Id.*) The incident involving Plaintiff caused him to suffer severe anxiety and depression. (*Id.*, ¶ 19.) As a result, Plaintiff receives psychological counseling and takes medication. (*Id.*)

Based upon these factual allegations, the Amended Complaint asserts the following seven causes of action: (1) a claim that Defendants Baez, Clanton, and Mancini subjected Plaintiff to a hostile work environment on the basis of his gender in violation of the Equal Protection Clause and 42 U.S.C. § 1983; (2) a claim that Defendants Baez, Clanton, and Mancini unlawfully imprisoned and/or used excessive force against Plaintiff by forcibly preventing him from leaving the floor so that Defendant Baez could place his testicles on Plaintiff's head, in violation of the Fourth Amendment and 42 U.S.C. § 1983; (3) a claim that Defendants CDTA, Basile, Waxman, Zarcone, and Mancini (a) implemented policies or procedures that caused the sexual harassment, (b) negligently or recklessly failed to implement or enforce policies or procedures that prevented or remedied the sexual harassment, and/or (c) negligently or recklessly failed to institute or implement an appropriate training regimen regarding sexual harassment, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (4) a claim that Defendants CDTA, Baez, and Clanton allowed Plaintiff to be sexually harassed in the workplace on the basis of his gender, in violation of N.Y. Exec. Law § 296 ("NYSHRL"); (5) a claim that Defendants CDTA, Baez, and Clanton assaulted and battered Plaintiff in violation of state law; (6) a claim that Defendants CDTA, Baez, and Clanton intentionally or negligently inflicted emotional distress on Plaintiff in violation of state law; and (7) a claim that Defendants CDTA, Basile, Waxman, Zarcone, and Mancini negligently supervised and/or retained Defendants Baez and Clanton in violation of state law. (*Id.*, ¶¶ 25-62.)

## II.    PARTIES' BRIEFING ON DEFENDANTS' MOTIONS

### A.    CDTA Defendants' Motion to Dismiss

#### 1.    CDTA Defendants' Memorandum of Law

Generally, in their memorandum of law, the CDTA Defendants assert six arguments with regard to Plaintiff's claims against them.  (Dkt. No. 29, Attach. 8 [CDTA Defs.' Mem. of Law].)

First, the CDTA Defendants argue that Plaintiff's third and seventh causes of action against Defendants Basile, Waxman, and Zarcone in their official capacities are barred by the Eleventh Amendment.  (*Id.* at 4-9.)

Second, the CDTA Defendants argue that Plaintiff's third cause of action does not assert a claim against Defendants Basile, Waxman or Zarcone in their individual capacities, but that to the extent that it does so, Plaintiff has still failed to allege facts plausibly suggesting that Defendants Basile, Waxman, and Zarcone were personally involved in the alleged constitutional violations for the following three reasons: (a) they were not direct participants in the sexual assault; (b) Plaintiff has failed to allege facts plausibly suggesting that they failed to remedy or address the sexual assault, nor has Plaintiff alleged that they had notice of the assault before Plaintiff commenced this suit; and (c) Plaintiff has failed to allege facts plausibly suggesting that they were grossly negligent in the management of their subordinates or that they failed to act after receiving information that constitutional violations were occurring.  (*Id.* at 9-12.)

Third, the CDTA Defendants argue that Plaintiff's state law claims (in his fourth through seventh causes of action) must be dismissed because Plaintiff failed to serve a timely notice of claim, as required by N.Y. Gen. Mun. Law § 50-e, within 90 days of the sexual assault.  (*Id.* at 13-15.)  More specifically, the CDTA Defendants argue that the incident occurred on November

7, 2013, and, therefore, Plaintiff had until February 5, 2014, to serve a notice of claim. (*Id.* at 14.) The CDTA Defendants argue that the notice of claim was served by delivering the notice to a U.S. Postal Service ("USPS") location to be sent by certified mail on February 6, 2014. (*Id.*) Accordingly, the CDTA Defendants argue that the notice of claim was served 91 days after the incident and Plaintiff's state law claims should be dismissed. (*Id.*)

Fourth, the CDTA Defendants argue that Plaintiff's fourth cause of action under NYSHRL § 296 against CDTA must be dismissed because (a) Plaintiff did not suffer an adverse employment action given that the incident occurred on Plaintiff's last day of employment, and (b) Plaintiff does not allege that the incident altered any condition of his employment. (*Id.* at 16-17.)

Furthermore, the CDTA Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a hostile work environment claim for the following three reasons: (a) Plaintiff has failed to allege facts plausibly suggesting that he was discriminated against on the basis of his gender; (b) that the alleged harassment was continuous or pervasive and that any past incidents of harassment were directed towards him; and (c) no adverse employment action was taken against him. (*Id.* at 17-18.)

Fifth, the CDTA Defendants argue that Plaintiff's fifth and sixth causes of action against CDTA must be dismissed for the following two reasons: (a) CDTA cannot be held vicariously liable for the acts of Defendants Baez and Clanton when they sexually assaulted Plaintiff because these acts were not within the scope of their employment; and (b) in any event, these claims are barred by the one-year statute of limitations applicable to intentional torts under N.Y. C.P.L.R. § 215(3) because the incident occurred on November 7, 2013, and the Complaint was not filed until February 5, 2015. (*Id.* at 19-22.)

Sixth, the CDTA Defendants argue that Plaintiff's seventh cause of action should be dismissed for the following four reasons: (a) although this claim is asserted against CDTA and Defendants Basile, Waxman, and Zarcone, it is more appropriately asserted against only CDTA as the real party in interest because CDTA will indemnify its employees and respondeat superior renders an employer vicariously liable for the torts committed by its employees acting within the scope of their employment; (b) in any event, this claim should be dismissed as against Defendants Basile, Waxman, and Zarcone because no employee-employer relationship existed between them and Plaintiff; (c) N.Y. Workers' Comp. Law § 11 provides the exclusive remedy for an employee injured in the course of employment, including injuries resulting from the negligence of a fellow employee; and (d) Plaintiff failed to serve CDTA with a timely notice of claim and, in any event, Plaintiff failed to assert negligent supervision and retention as a claim in his late notice of claim or any factual allegations that could serve as a basis for this claim. (*Id.* at 22-26.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff asserts seven arguments in opposition to the CDTA Defendants' motion.

First, Plaintiff argues that he filed and served a timely notice of claim for the following three reasons: (a) although Defendants rely upon the postmark that was affixed to the envelope that contained Plaintiff's notice of claim, this postmark reflects the date and time that Plaintiff's envelope was prepared for mailing as opposed to when Plaintiff deposited his notice of claim with the U.S. Postal Service; (b) Plaintiff has the purchase receipt reflecting that his notice of claim was mailed on February 5, 2014 (the 90th day after the incident occurred), and will provide

this receipt during discovery; and (c) the postmark that Defendants rely upon was not attached to the Complaint or Amended Complaint and, taking the Amended Complaint's allegations as true, Plaintiff timely served a notice of claim or, in the alternative, he should be given leave to amend his Complaint so that he can attach the purchase receipt. (Dkt. No. 37, at 5-6 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that his state law intentional tort claims are not time-barred because the requirement to file a notice of claim against a municipal agency extends the one-year statute of limitations period to one-year and ninety days. (*Id.* at 6-7.)

Third, Plaintiff argues that the Amended Complaint asserts claims against Defendants Basile, Waxman, and Zarcone in their individual capacities and, therefore, those claims are not barred by the Eleventh Amendment. (*Id.* at 7.) Furthermore, Plaintiff argues that the Amended Complaint makes specific allegations regarding (a) their failure to adopt appropriate policies, (b) their ratification of an unconstitutional practice, and (c) their failure to supervise, train, and discipline their subordinates in the face of known and pervasive misconduct. (*Id.* [citing Dkt. No. 22, ¶¶ 20-21, 37-45 (Pl.'s Am. Compl.)].)

Fourth, Plaintiff argues that the Amended Complaint alleges facts plausibly suggesting a hostile work environment claim under the Equal Protection Clause and NYSHRL § 296 for the following three reasons: (a) Plaintiff need not demonstrate that the harassment he suffered was continuous and pervasive but that the tea-bagging incident was sufficiently severe, in and of itself, to establish an objectively hostile work environment; (b) Plaintiff subjectively perceived the abuse as severe because he objected to Defendants' conduct and required psychological counseling as a result of the incident; and (c) Defendants' conduct was motivated by Plaintiff's gender. (*Id.* at 9-13.)

Furthermore, in support of Plaintiff's argument that Defendants' conduct was motivated by his gender, Plaintiff makes the following four arguments: (a) the Court should infer that Defendants Baez's and Clanton's conduct was motivated by sexual desire in light of their repeated harassment of male employees and the fact that there was physical contact with gender-specific body parts during the incident in question; (b) tea-bagging is a gender-specific act usually performed on males; (c) Defendants Baez and Clanton repeatedly directed sexually inappropriate conduct towards male co-workers and subordinates; and (d) Defendants Baez and Clanton applied a gender stereotype against male employees by assuming that men are not offended by sexually explicit behavior exhibited by other men or, in the alternative, that Plaintiff, as a male, should not be as offended by tea-bagging as a woman would be. (*Id.* at 13-19.)

Fifth, Plaintiff argues that he has alleged facts plausibly suggesting that Defendants Zarcone, Basile, and Waxman were personally involved in the alleged constitutional violations by condoning a custom of pervasive sexual harassment in the workplace, failing to appropriately supervise and train their employees regarding sexual harassment, and failing to discipline Defendants Clanton and Baez for the following five reasons: (a) Defendants Baez and Clanton repeatedly tea-bagged other employees with impunity; (b) Defendants Baez and Clanton dry humped another employee in front of a high ranking supervisory official; (c) Defendant Baez routinely exposed his penis to his co-workers; (d) Defendant Baez was the subject of numerous harassment complaints; and (e) CDTA was successfully sued in a lawsuit involving a CDTA employee sexually assaulting a bus passenger. (*Id.* at 22-23.) Plaintiff argues that, despite this inappropriate conduct, the only discipline Defendant Baez received was a re-training on how to speak to other employees appropriately. (*Id.* at 23.)

Sixth, Plaintiff argues that Defendants Baez, Clanton, and Mancini acted under color of state and/or within the scope of their employment during the incident in question for the following six reasons: (a) Defendants Baez and Clanton were employed as supervisors for a public agency; (b) although the Amended Complaint does not specifically allege that Defendants Clanton and Mancini were Plaintiff's immediate supervisors, it is reasonable to infer that, these Defendants, as supervisors, had the power to implement adverse employment actions against Plaintiff; (c) the sexual assault occurred during work hours and at the CDTA garage; (d) Defendant Clanton was on duty and in uniform at the time of the assault; (e) because Defendant Clanton assaulted Plaintiff with Defendant Baez, a supervisor, it is reasonable to infer that Defendant Clanton engaged in this conduct with a supervisor's direct approval; and (f) the assault on Plaintiff was made possible by the actual and/or apparent authority granted to Defendant Clanton by CDTA because the assault in question was part of a larger pattern and practice of sexual assaults committed by CDTA employees and supervisors, which was known and ratified by CDTA policymakers. (*Id.* at 26-29.)

Seventh, and finally, Plaintiff agrees with the CDTA Defendants that his seventh cause of action for negligent supervision and prima facie tort is barred by N.Y. Workers' Compensation law. (*Id.* at 31.) Therefore, Plaintiff voluntarily dismisses this cause of action. (*Id.*)

### 3. CDTA Defendants' Reply Memorandum of Law

Generally, the CDTA Defendants assert four arguments in reply to Plaintiff's opposition.

First, the CDTA Defendants argue that Plaintiff's fourth, fifth, and sixth causes of action must be dismissed because Plaintiff failed to serve a timely notice of claim. (Dkt. No. 41, at 2-3 [CDTA Defs.' Reply Mem. of Law].) More specifically, the CDTA Defendants argue that,

although Plaintiff claims he has documentary evidence that establishes he served a timely notice of claim, Plaintiff has failed to submit it and instead relies on conclusory assertions in support of his argument. (*Id.* at 3.) Furthermore, the CDTA Defendants argue that they can rely on the USPS tracking slip to establish that the notice of claim was untimely because it is incorporated by reference in and/or integral to Plaintiff's Amended Complaint. (*Id.* at 4-5.)

Second, the CDTA Defendants reiterate their argument that Plaintiff's NYSHRL § 296 claim should be dismissed because Plaintiff has failed to allege facts plausibly suggesting that he suffered an adverse employment action. (*Id.* at 5.) Furthermore, the CDTA Defendants argue that Plaintiff cannot establish a hostile work environment claim for the following three reasons: (a) the Amended Complaint does not allege facts plausibly suggesting that Defendants' conduct was motivated by Plaintiff's gender, nor does it allege that Defendants' conduct was motivated by a sexual desire, that tea-bagging is a gender specific act, that Defendants primarily targeted male employees, or that Defendants applied a gender stereotype against male employees; (b) Plaintiff cannot establish that this single incident was sufficiently continuous or pervasive nor do prior instances of alleged misconduct support Plaintiff's claim because those incidents were not directed towards him and/or occurred at a time when Plaintiff was not employed by CDTA; and (c) CDTA cannot be held vicariously liable for the acts of Defendants Baez and Clanton because Plaintiff fails to allege that Baez and Clanton were his supervisors. (*Id.* at 5-7.)

Third, the CDTA Defendants argue that Plaintiff has failed to address their argument that Defendants Clanton and Baez were not acting within the scope of their employment at the time of the incident and, therefore, his fifth and sixth causes of action should be dismissed. (*Id.* at 8.) In any event, the CDTA Defendants argue that these claims are time-barred by the one-year

statute of limitations period for intentional torts.  (*Id.* at 9.)  The CDTA Defendants argue that the one-year and ninety-day limitations period is not applicable to CDTA as Plaintiff contends, because CDTA is a public benefit corporation and not a municipal agency.  (*Id.*)

Fourth, and finally, the CDTA Defendants argue that Plaintiff's third cause of action against Defendants Basile, Waxman, and Zarcone must be dismissed because the Amended Complaint fails to allege (apart from a single reference in a section describing the parties) that these Defendants are being sued in their individual capacities and, therefore, the Eleventh Amendment bars this claim to the extent that it is asserted against them in their official capacities.  (*Id.*)  In addition, the CDTA Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a supervisory liability claim against Defendants Basile, Waxman, and Zarcone for the following two reasons: (a) the Amended Complaint fails to allege facts plausibly suggesting that Defendants Basile, Waxman, and Zarcone had notice of prior instances of "inappropriate sexual conduct"; and (b) Plaintiff acknowledges that Defendant Baez was disciplined for his past behavior.  (*Id.* at 10-11.)

**B.**     **Defendants Clanton's and Mancini's Motion to Dismiss**

**1.**     **Defendants Clanton's and Mancini's Memorandum of Law**

Generally, in their memorandum of law, Defendants Clanton and Mancini assert six arguments in support of their motion to dismiss.  (Dkt. No. 27, Attach. 4 [Defs.' Mem. of Law].)

First, Defendants Clanton and Mancini argue that Plaintiff's § 1983 claims must be dismissed as against them because Plaintiff cannot demonstrate that they acted under color of state law for the following three reasons: (a) Defendants Clanton's and Mancini's actions at the time of the assault were made in furtherance of a personal pursuit rather than ones exercised

under a right or privilege created by the State; (b) although Plaintiff alleges that Defendant Mancini was a foreman, the Amended Complaint fails to allege facts plausibly suggesting that Mancini was responsible for training employees at CDTA, had the authority to implement or enforce any policies or procedures, or that Mancini was Plaintiff's supervisor; and (c) any claims against them in their official capacities are barred by the Eleventh Amendment. (*Id.* at 4-10.)

Second, Defendants Clanton and Mancini argue that they are entitled to qualified immunity for two reasons: (a) Plaintiff has not alleged that either of them were the ones who actually committed the sexual assault but that Defendant Clanton merely restrained Plaintiff on the ground while Defendant Mancini took a photograph of the incident, and thus their actions were insufficient to state a hostile work environment claim; and (b) Plaintiff has not alleged that these actions were motivated by his sex or gender, which is a necessary element of a § 1983 equal protection claim. (*Id.* at 10-13.)

With respect to Plaintiff's § 1983 false imprisonment claim, Defendants Clanton and Mancini argue that they are entitled to qualified immunity for the following two reasons: (a) Defendant Clanton's actions in restraining Plaintiff on the ground "for several minutes" was a single incident of horseplay and is insufficient to establish a constitutional violation; and (b) Defendant Mancini allegedly witnessed and photographed the incident and is not accused of imprisoning the Plaintiff in any manner or otherwise using excessive force. (*Id.* at 14-15.)

Third, Defendants Clanton and Mancini argue that Plaintiff's NYSHRL § 296 claim against Clanton should be dismissed for the following four reasons: (a) Plaintiff's allegations with respect to this claim are directed towards Defendants Baez and CDTA and there are no substantive allegations regarding Defendant Clanton; (b) to the extent that a claim against

Defendant Clanton can be inferred from these allegations, Plaintiff has failed to allege that Clanton's actions were motivated by Plaintiff's gender; (c) Plaintiff has failed to allege facts plausibly suggesting that this incident constituted harassment that was continuous or pervasive; and (d) Plaintiff has failed to allege facts plausibly suggesting that this incident amounted to discrimination that affected the terms, conditions, or privileges of his employment or that he otherwise suffered an adverse employment action.  (*Id.* at 16-19.)

Fourth, Defendants Clanton and Mancini argue that Plaintiff's fifth, sixth and seventh causes of action are time-barred by the one-year statute of limitations period applicable to intentional torts under CPLR § 215(3).  (*Id.* at 19-20.)

Fifth, Defendants Clanton and Mancini argue that Plaintiff's seventh cause of action against Mancini for negligent supervision and prima facie tort should be dismissed for the following three reasons: (a) Defendant Mancini was not the employer of either tortfeasor; (b) Plaintiff's prima facie tort claim is duplicative of his other tort claims asserted against Defendant Mancini; and (c) Plaintiff has failed to plead any specific special damages necessary to state a claim for prima facie tort.  (*Id.* at 21-22.)

Sixth, and finally, Defendants Clanton and Mancini argue that the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims if his federal claims are dismissed.  (*Id.* at 23.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff asserts five arguments in opposition to Defendants Clanton's and Mancini's motion to dismiss.  As an initial matter, the Court notes that Plaintiff repeats the arguments summarized above in Part II.A.2. of this Decision and Order in opposition to the

following four arguments: (1) that his claims should be dismissed on Eleventh Amendment immunity grounds, (2) that his state law claims are time-barred, (3) that he failed to serve a timely notice of claim, and (4) that he has not alleged facts plausibly suggesting that his constitutional rights were violated or that Defendants were acting under color of state law. (Dkt. No. 37, at 5-20, 26-29, 31 [Pl.'s Opp'n Mem. of Law].) Accordingly, for the sake of brevity, the Court will not restate those arguments here. In addition to these arguments, Plaintiff makes the following five arguments in opposition to Defendants Clanton's and Mancini's motion to dismiss.

First, Plaintiff argues that he has alleged facts plausibly suggesting a supervisory liability claim under § 1983 and the NYSHRL against Defendant Mancini for the following four reasons: (a) Defendant Mancini witnessed the sexual assault but failed to intervene; (b) Defendant Mancini was grossly negligent in supervising his subordinate, Defendant Clanton; (c) Defendant Mancini was clearly aware that the assault was a violation of Plaintiff's constitutional rights but failed to remedy it; and (d) a reasonable inference from Plaintiff's Amended Complaint plausibly suggests that Defendant Mancini had the authority to take adverse employment actions against Plaintiff. (*Id.* at 20-21.)

Second, Plaintiff argues that he has alleged facts plausibly suggesting a § 1983 false imprisonment claim against Defendants Clanton and Mancini for the following four reasons: (a) Defendants intended to confine him; (b) Plaintiff was conscious of the confinement; (c) Plaintiff did not consent to the confinement because he screamed at the Defendants to stop assaulting him and attempted to crawl away but was physically restrained; and (d) the confinement was not privileged. (*Id.* at 24-25.) In addition, with respect to Defendant Mancini's argument that he did

not physically restrain Plaintiff, Plaintiff argues that Mancini's failure to intervene suffices for establishing liability for this violation.  (*Id.* at 26.)

Third, Plaintiff argues that he has pled special damages in support of his intentional infliction of emotional distress claim because the Amended Complaint alleges that he suffered depression, anxiety, and required psychological counseling as a result of being sexually harassed, which constitute special damages.  (*Id.* at 29.)

Fourth, Plaintiff argues that Defendants are not entitled to qualified immunity for the following two reasons: (a) the right to be free from severe or pervasive sexual harassment and false imprisonment is clearly established; and (b) qualified immunity is a fact-intensive inquiry that is generally ill-suited for determination on a motion to dismiss.  (*Id.* at 30.)

Fifth, and finally, Plaintiff agrees with Defendants that, should the Court dismiss his federal claims, the Court should not retain supplemental jurisdiction over his state law claims. (*Id.*)

### 3.      Defendants Clanton's and Mancini's Reply Memorandum of Law

Generally, Defendants Clanton and Mancini assert five arguments in reply to Plaintiff's opposition.

First, Defendants Clanton and Mancini argue that Plaintiff's fifth, sixth, and seventh causes of action are time-barred by the one-year limitations period under N.Y. C.P.L.R. § 215 because N.Y. Gen. Mun. Law § 50-i, which has a one-year and ninety day limitations period, is applicable only to municipalities and not public benefit corporations, such as CDTA.  (Dkt. No. 39, at 2-3 [Defs.' Reply Mem. of Law].)

Second, Defendants Clanton and Mancini reiterate their arguments that Plaintiff has failed to allege facts plausibly suggesting that they acted under color of state law. (*Id.* at 4-5.) In addition, Defendants argue that, although Plaintiff claims that Defendant Mancini failed to intervene and took photographs of the incident, these acts (and/or inactions) should be considered as acts in furtherance of a personal pursuit because they were wholly unrelated to Mancini's title or responsibilities at CDTA. (*Id.* at 5.)

Third, Defendants Clanton and Mancini argue that they did not violate Plaintiff's equal protection rights for the following three reasons: (a) the pleadings contain no facts plausibly suggesting that Defendants Mancini or Clanton sexually desired Plaintiff, held stereotypical views about men, engaged in conduct that was motivated by Plaintiff's gender, or primarily targeted men for any purpose; (b) their actions, when viewed in isolation, do not amount to severe or pervasive harassment or rise to the level of creating a hostile work environment; and (c) Defendant Mancini is not accused of any offensive or hostile behavior, only that he witnessed and took photographs of the incident. (*Id.* at 5-8.)

Fourth, Defendants Clanton and Mancini reiterate their arguments that Plaintiff's Fourth Amendment claim should be dismissed because they are entitled to qualified immunity. (*Id.* at 8-9.)

Fifth, and finally, Defendants Clanton and Mancini argue that Plaintiff's NYSHRL § 296 claim against Clanton should be dismissed for the following four reasons: (a) the Amended Complaint fails to assert any allegations regarding Defendant Clanton's actions with respect to this claim; (b) the Amended Complaint fails to allege facts plausibly suggesting that Defendant Clanton's actions were motivated by gender or sex; (c) the incident complained of does not

amount to harassment that was either continuous or pervasive; and (d) the Amended Complaint
fails to allege facts plausibly suggesting that the incident constituted discrimination or otherwise
altered the terms or conditions of Plaintiff's employment. (*Id.* at 9-10.)

## III.    RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief
can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:
(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a
challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d
204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo*
review).

Because such dismissals are often based on the first ground, a few words regarding that
ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a
pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to
relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between
permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement
to relief is often at the heart of misunderstandings that occur regarding the pleading standard
established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"
pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F.
Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has
held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.
P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at

least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

## IV. ANALYSIS

### A. Whether Defendants Clanton and Mancini Were Acting Under Color of State Law When Plaintiff Was Sexually Assaulted

After carefully considering the matter, the Court answers this question in the affirmative with respect to Defendant Mancini for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 37, at 20-21 [Pl.'s Opp'n Mem. of Law].) However, the Court answers this question in the negative with respect to Defendant Clanton for the reasons stated in Defendants Clanton's and Mancini's memorandum of law and reply memorandum of law. (Dkt. No. 27, Attach. 4, at 6-8 [Defs.' Mem. of Law]; Dkt. No. 39, at 3-5 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

"State employees act under the color of state law when they act (1) in their official capacity clothed with the authority of state law, or (2) under pretense of law by purporting to act with official sanction." *Louis v. Metro Transp. Auth.*, 12-CV-6333, 2015 WL 6814739, at *4 (E.D.N.Y. Nov. 6, 2015) (internal quotation marks omitted). However, "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996). "[A]cts of officers in the ambit of their personal pursuits are plainly excluded" from § 1983 liability. *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994). Thus, "where the harassment in question does not involve use of state authority or position, the harasser is generally found not to be acting under color of state law." *Williams v. City of New York*, 99-CV-2697, 2006 WL 2668211, at *27 (E.D.N.Y. Sept. 11, 2006). "Because 'there is no bright line test for distinguishing personal pursuits from activities taken under color of law,' we look to 'the nature of the officer's act' to determine whether he acted under color of state law, not just his 'status' of being on or off

official duty." *Burns v. City of Utica*, 590 F. App'x 44, 50 (2d Cir. 2014) (quoting *Pitchell*, 13 F.3d at 548).

Here, the Amended Complaint alleges that Defendant Mancini failed to supervise his subordinate, Defendant Clanton, when Clanton participated in sexually assaulting Plaintiff and that Mancini failed to intervene to protect Plaintiff from being assaulted. (Dkt. No. 22, ¶ 18 [Pl.'s Am. Compl.].) These facts plausibly suggest that Defendant Mancini directly participated in the incident because he was a supervisor who personally observed the assault but failed to intervene in it. *See Vega v. Fox*, 457 F. Supp. 2d 172, 186 (S.D.N.Y. 2006) (denying defendants' summary judgment motion to dismiss plaintiff's § 1983 claim where it was undisputed that two caseworkers and a supervisor observed a teenager get assaulted at a residential treatment facility but failed to intervene); *Wise v. New York City Police Dep't*, 928 F. Supp. 355, 368 (S.D.N.Y. 1996) (denying supervisor's summary judgment motion where genuine dispute of material fact existed regarding whether supervisor observed his subordinates engage in discriminatory conduct against a female officer but failed to intervene); *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (stating that "[o]missions can violate civil rights, and under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983") (internal quotation marks omitted).

However, with respect to Defendant Clanton, the Amended Complaint alleges that he was employed as a mechanic by the CDTA and was Plaintiff's co-worker. (Dkt. No. 22, ¶¶ 11, 13 [Pl.'s Am. Compl.].) Defendant Clanton's actions in restraining Plaintiff so that Defendant Baez could sexually assault him was a personal pursuit unrelated to Defendant Clanton's duties as an employee of CDTA. More specifically, the Amended Complaint fails to allege facts

plausibly suggesting that Defendant Clanton's actions in restraining Plaintiff were made possible only because he was clothed with the authority of state law or that he was misusing some power that he possessed by virtue of state law. Furthermore, the Amended Complaint's allegations that Defendant Clanton was employed by CDTA, on duty, in uniform, and on CDTA's premises during work hours is insufficient to plausibly suggest that he was acting under color of state law. *Kern*, 93 F.3d at 43; *see also Arroyo v. City of Bridgeport*, 12-CV-1258, 2015 WL 235065, at *8 (D. Conn. Jan. 16, 2015) ("The fact that these offensive incidents occurred while Blackwell was on duty is not sufficient on its own without evidence that his actions were related to the authority conferred upon him by the state."); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 230 (2d Cir. 2004) ("mere employment by the state does not mean that the employee's every act can properly be characterized as state action"). Finally, the Court is unpersuaded by Plaintiff's remaining arguments. (Dkt. No. 37, at 28-29 [Pl.'s Opp'n Mem. of Law].) *See Burns*, 590 F. App'x at 50 (affirming district court's dismissal of plaintiff's § 1983 claim on motion to dismiss where complaint alleged that plaintiff was sexually assaulted by another firefighter because "Knapp's alleged sexual assault of Burns, if proven, was palpably a personal pursuit entirely unrelated to his duties as a firefighter").

**B.**     **Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Hostile Work Environment Claim Under the Equal Protection Clause and the NYSHRL[3]**

After carefully considering the matter, the Court answers this question in the affirmative with regard to the Equal Protection claim against Defendants Baez and Mancini and the NYSHRL claim against Defendants CDTA, Baez, and Clanton for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 37, at 9-19 [Pl.'s Opp'n Mem. of Law].) However, the Court answers this question in the negative with regard to the Equal Protection claim against Defendant Clanton for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 27, Attach. 4, at 6-8 [Defs.' Mem. of Law]; Dkt. No. 39, at 3-5 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"To establish a hostile work environment claim under Section 1983, a plaintiff must demonstrate that (1) she was intentionally harassed; (2) the harassment was based on her race or gender; (3) such actions were taken under color of state law; and (4) the harassment was so severe as to render the work environment hostile to her."  *Kennedy v. New York*, 14-CV-0990, 2016 WL 850910, at *6 (W.D.N.Y. Mar. 4, 2016); *accord*, *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 323 (E.D.N.Y. 2014); *Burhans v. Lopez*, 24 F. Supp. 3d 375, 380 (S.D.N.Y.

_____

[3]     The Court notes that this analysis is governed by the same standards employed in Title VII hostile work environment claims and the NYSHRL.  *See Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 744-45 (2d Cir. 2003) (noting that a § 1983 sexual harassment claim alleging violations of one's Fourteenth Amendment equal protection rights that is based on a hostile environment theory, is "governed by traditional Title VII 'hostile environment' jurisprudence"); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under Title VII, . . . Section 1983, and the New York State Human Rights Law is essentially the same."); *accord*, *Piccone v. Town of Webster*, 09-CV-6266, 2011 WL 3322550, at *12 (W.D.N.Y. Aug. 2, 2011); *Kennedy v. New York*, 14-CV-0990, 2016 WL 850910, at *6 (W.D.N.Y. Mar. 4, 2016); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 587 (S.D.N.Y. 2011).

2014).  "In addition, to succeed on a . . . [NYSHRL] hostile work environment claim *against an employer*, the plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 452 (E.D.N.Y. 2011) (internal quotations omitted); *accord*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (Title VII context).  "When evaluating a hostile work environment claim, courts should consider the totality of the circumstances, such as the frequency and severity of the conduct, whether it was physically or verbally threatening, and whether it unreasonably affected the employee's job performance."  *Burhans v. Lopez*, 24 F. Supp. 3d 375, 380 (S.D.N.Y. 2014) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 [2d Cir. 2014]).  "The analysis has both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  *Burhans*, 24 F. Supp. 3d at 380 (quoting *Rivera*, 743 F.3d at 20).

In the present case, the first factor is not in dispute.  With respect to the second factor, "'the critical issue' for same-sex harassment claims is 'whether members of one sex are exposed to disadvantageous terms or conditions of employment [e.g., a hostile work environment] to which members of the other sex are not."  *Barrows v. Seneca Foods Corp.*, 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 [1998]).  The Supreme Court has outlined three examples of evidence that could satisfy this test:

> (1) the harasser is homosexual (and, therefore, presumably motivated by sexual desire); (2) a victim is "harassed in such sex-specific and derogatory terms by [someone of the same gender] as to make it clear that the harasser is motivated by general hostility

to the presence of [someone of the same gender] in the workplace"; or (3) there is "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*Barrows*, 512 F. App'x at 117 (quoting *Oncale*, 523 U.S. at 80-81).

As discussed above in Part II.A.2. of this Decision and Order, Plaintiff argues the Court should infer and presume that (1) Defendants Baez's and Clanton's conduct was motivated by sexual desire, (2) tea-bagging is a gender-specific act usually performed on males, (3) Defendants primarily targeted male employees, and (4) Defendants applied a gender stereotype against male employees. However, as the CDTA Defendants correctly note, Plaintiff has not alleged any of these facts in his Amended Complaint. Nonetheless, the Court agrees with Plaintiff that he has alleged facts from which a jury could reasonably infer that Defendants primarily targeted male employees. More specifically, the Amended Complaint alleges that Defendants Baez and Clanton have tea-bagged other male employees, that Defendant Baez has exposed himself to at least one other male employee, and that Defendants Baez and Clanton assaulted another male employee by tackling him and pretending to "dry hump[ ]" him. (Dkt. No. 22, ¶ 20 [Pl.'s Am. Compl.].) To be sure, the Amended Complaint includes an allegation that Defendant Baez also sexually harassed a female employee. (*Id.*) However, the Amended Complaint does not allege that this harassment involved tea-bagging. As a result, the instances of sexual harassment targeting male employees, as alleged in the Amended Complaint, leads this Court to find that, at this stage of the litigation, Plaintiff has alleged facts plausibly suggesting that Defendants' conduct was motivated by his gender. *See Barrows*, 512 F. App'x at 118-19 (finding that sufficient direct comparative evidence existed warranting denial of summary judgment where a male supervisor "directed vulgar comments toward many of his male

coworkers and struck the genitals of numerous male employees, but female employees . . . were apparently not subjected to the same treatment").[4]

With respect to the third factor, the Court has found (as discussed above in Part IV.A. of this Decision and Order) that the Amended Complaint alleges facts plausibly suggesting that Defendant Mancini was acting under color of state law at the time of the incident. However, the Court has also found that Defendant Clanton (against whom this claim is also asserted) was not acting under color of state law at the time of the incident for the reasons discussed above in Part IV.A. of this Decision and Order.

With respect to the fourth factor, the Second Circuit has noted that "[i]solated incidents usually will not suffice to establish a hostile work environment." *Redd v. New York Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012). However, the Second Circuit has also found that, under certain circumstances, "a single episode of harassment can establish a hostile work environment if the incident is sufficiently 'severe.'" *Redd*, 678 F.3d at 176 (citing cases). Furthermore, the Second Circuit has observed that "direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment." *Id.* at 177 (quoting *Worth v. Tyer*, 276 F.3d 249, 268 [7th Cir. 2001]); *accord, Barrows*, 512 F. App'x at 119.

_____

[4]    To the extent that Defendants would argue that these past instances of misconduct should not be considered because they did not involve Plaintiff or specifically target him (Dkt. No. 41, at 7 [CDTA Defs.' Reply Mem. of Law]), such an argument lacks merit. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 222 (2d Cir. 2004) ("The fact that much of this offensive material was not directed specifically at [the claimant] . . . does not, as a matter of law, preclude a jury from finding that the conduct subjected [the claimant] to a hostile work environment based on her sex"); *Schwapp v. Town of Avon*, 118 F.3d 106, 11 (2d Cir. 1997) ("a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment"); *accord, Delgado v. City of Stamford*, 11-CV-1735, 2015 WL 6675534, at *28 (D. Conn. Nov. 2, 2015).

Having considered all of the allegations and the totality of the circumstances alleged in the Amended Complaint, the Court finds that Plaintiff has alleged facts plausibly suggesting a hostile work environment based upon the incident alleged.  More specifically, Plaintiff has alleged that he was restrained against his will, despite his protests that he be let go, while Defendant Baez, a supervisor, placed his testicles and unclothed penis on Plaintiff's head.  The Court finds that this incident cannot be considered as merely "horseplay" as the Defendants argue.  *See Petrosino*, 385 F.3d at 221 ("'The objective hostility of a work environment depends on the totality of the circumstances,' viewed from the perspective . . . of a 'reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target.'") (quoting *Oncale*, 523 U.S. at 81).

As discussed above in Parts II.A.1. and II.B.1. of this Decision and Order, Defendants argue that Plaintiff has failed to allege that this incident resulted in an adverse employment action and that, because it occurred on Plaintiff's last day of work, the incident could not have adversely affected the terms or conditions of his employment.  "However, an adverse employment action is not a required element of a hostile work environment claim. . . . Plaintiff must prove only that the harassment was sufficiently severe to affect a term, condition, or privilege of her employment, not that she suffered a tangible adverse employment action in connection with the harassment."  *Szwalla v. Time Warner Cable, LLC,* 13-CV-0713, 2015 WL 5708538, at *5 (N.D.N.Y, Sept. 29, 2015) (D'Agostino, J.); *accord, Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 433 (E.D.N.Y. 2014).  Furthermore, "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability." *Tomka v. Seiler Corp.*, 66 F3d 1295, 1305 (2d

Cir. 1995) *abrogated on other grounds by E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247 (2d Cir. 2014). Here, it is undisputed that the incident occurred while Plaintiff was on duty and at work. Moreover, it is unclear from the Amended Complaint how many hours remained in Plaintiff's work day at the time of the incident. Certainly, Plaintiff did not plead himself out of Court on this issue.

Finally, with respect to whether this conduct can be imputed to CDTA for purposes of Plaintiff's NYSHRL claim, "[w]hen, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Gorzynski*, 596 F.3d at 103. As discussed above, the Amended Complaint alleges that both Defendants Baez and Mancini held supervisory positions at the time of the incident. Therefore, their conduct is automatically imputed to CDTA.

Accordingly, for all of the foregoing reasons, Plaintiff's hostile work environment claim under the Equal Protection Clause (in his first cause of action) is dismissed against Defendant Clanton. However, because acting under color of state law is not a required element of a NYSHRL claim, Defendants' respective motions to dismiss Plaintiff's fourth cause of action against CDTA and Defendant Clanton are denied.

### C. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Claim for False Imprisonment and/or Excessive Force Under the Fourth Amendment

After carefully considering the matter, the Court answers this question in the negative for the two reasons set forth below.

First, "[t]he Fourth Amendment is not the proper source of a plaintiff's constitutional rights when the objectionable conduct occurs outside of a criminal investigation or other form of governmental investigation or activity." *Love v. Town of Granby*, 03-CV-1960, 2004 WL

1683159, at *4 (D. Conn. July 12, 2004); *accord*, *Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002); *see also Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) (stating that "[s]exual misconduct by a police officer toward another generally is analyzed under the Fourteenth Amendment; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment"); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (holding that, "[b]ecause the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct, the claim was not one of a Fourth Amendment violation, but of the violation of the substantive due process right under the Fourteenth Amendment not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm"); *Doe v. City of Hartford*, 03-CV-1454, 2004 WL 1091745, at *2 (D. Conn. May 13, 2004) (holding that "the Fourth Amendment is not the proper source for Doe's claim stemming from a sexual assault; instead, claims of rape or assault by a police officer are properly analyzed under the Fourteenth Amendment . . . . Nor is the Fourth Amendment the appropriate constitutional provision for violations occurring outside of a police investigation").

In *Poe*, a police officer surreptitiously videotaped a female changing her clothes in the police officer's office. *Poe*, 282 F.3d at 129. Plaintiff brought an action alleging, *inter alia*, that the videotaping constituted an unreasonable search and seizure in violation of the Fourth Amendment. *Id.* at 136. The Second Circuit held that the Fourth Amendment was not implicated by the officer's misconduct because "his surreptitious videotaping of [plaintiff] during his assigned duties was for his personal reasons and not to advance any governmental purpose." *Id.* at 137. Similarly, in the present case, the Amended Complaint does not allege facts plausibly suggesting that Plaintiff was sexually assaulted during a governmental investigation or

other custodial situation.  Rather, Defendants' actions in tea-bagging Plaintiff were for purely personal reasons unrelated to any governmental purpose.

Second, Plaintiff's request that the Court read his claim as one arising under the Fourteenth Amendment instead of the Fourth Amendment or, in the alternative, be given leave to file a second amended complaint, is denied.  (Dkt. No. 37, at 24 n.9 [Pl.'s Opp'n Mem. of Law].)[5]  The Amended Complaint expressly alleges violations of Plaintiff's Fourth Amendment rights, not the Fourteenth Amendment, and, therefore, Defendants have not been given notice of a Fourteenth Amendment claim or had an opportunity to respond to such a claim.  Furthermore, Plaintiff has not followed the proper procedure under Fed. R. Civ. P. 15(a) and this Court's Local Rules to amend his pleadings.  In addition, the Court notes that Plaintiff has previously amended his pleadings and did not take that opportunity to assert a Fourteenth Amendment claim.

Accordingly, for all of the foregoing reasons, Plaintiff's false imprisonment and/or excessive force claims under the Fourth Amendment are dismissed.

### D.    Whether Defendant Mancini Is Entitled to Qualified Immunity

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 37, at 30 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

"Qualified immunity protects public officials from civil liability only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for

_____

[5]    Plaintiff makes numerous similar requests throughout his opposition memorandum of law (*see*, *e.g.*, Dkt. No. 37, at 4, 6, 21, 26-27 [Pl.'s Opp'n Mem. of Law]), which are likewise denied.

the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d

108, 114 (2d Cir. 2015). "A right is clearly established if (1) the law is defined with reasonable

clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a

reasonable defendant would have understood from the existing law that his [or her] conduct was

unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (internal citation and quotation

marks omitted). "[A]n employee's right to be free from sexual harassment in the workplace is

well-settled and has been for some time." *Bermudez v. City of New York*, 783 F. Supp. 2d 560,

594 (S.D.N.Y. 2011).

Furthermore, "[w]hile a defendant may assert a qualified immunity defense on a motion

to dismiss, 'the defense faces a formidable hurdle when advanced on such a motion.'" *Rossi v.

Fischer*, 13-CV-3167, 2015 WL 769551, at *17 (S.D.N.Y. Feb. 24, 2015) (quoting *McKenna v.

Wright*, 386 F.3d 432, 434 [2d Cir. 2004]). Indeed, a qualified immunity defense in the context

of a 12(b)(6) motion to dismiss is only available where the defense is based on facts appearing

on the face of the complaint. *K.D. ex rel Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197,

211-12 (S.D.N.Y. 2013).

Here, Plaintiff's right to be free from sexual assault in the workplace is clearly

established. Moreover, under the circumstances as interpreted in the light most favorable to

Plaintiff, it would have been objectively unreasonable for Defendant Mancini to believe that

Defendant Baez was not violating Plaintiff's rights when Baez sexually assaulted Plaintiff.

Accordingly, Defendant Mancini is not entitled to qualified immunity at this time. *See Wise*, 928

F. Supp. at 370 (holding that "Parrino is not entitled to qualified immunity if it is determined at

trial that he observed the training room incident, that this incident created a hostile work

environment, and that he did nothing about it"); *Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013) (denying police officers' motion for summary judgment on qualified immunity grounds where officers observed another officer use excessive force against plaintiff but failed to intervene).

### E. Whether Defendants Are Entitled to Eleventh Amendment Immunity

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 37, at 7-8 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

Defendants argue that, although the Amended Complaint asserts claims against them in their individual capacities, Plaintiff's claims should be construed as ones against them in their official capacities. (Dkt. No. 27, Attach. 4, at 9-10 [Defs.' Mem. of Law]; Dkt. No. 29, Attach. 8, at 5-6 [CDTA Defs.' Mem. of Law].) Where a question exists as to whether an official is sued personally, in his official capacity or in both capacities, an examination of the substance of the complaint and the course of proceedings ordinarily resolves the nature of the liability sought to be imposed. *Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995); *see also Yorktown Med. Lab., Inc. v. Perales*, 948 F.2d 84, 88-89 (2d Cir. 1991) (noting that courts must "look to the totality of the complaint as well as the course of proceedings to determine whether the defendants were provided with sufficient notice of potential exposure to personal liability"). Furthermore, "[t]here is no limitation on the ability of a plaintiff to sue an official in both his individual and official capacity." *Odom v. Matteo*, 772 F. Supp. 2d 377, 392 (D. Conn. 2011).

Here, Plaintiff specifically alleged in his Amended Complaint that Defendants were being sued in their individual capacities. (Dkt. No. 22, ¶¶ 7-12 [Pl.'s Am. Compl.].) Moreover,

in responding to Defendants' motion, Plaintiff reaffirmed his position that he is suing the individual Defendants in their individual capacities. Therefore, to the extent that Plaintiff has alleged facts plausibly suggesting a claim against Defendants in their individual capacities, those claims are not barred by the Eleventh Amendment.[6]

### F. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Supervisory Liability Claim Against Defendants Mancini, Basile, Waxman, and Zarcone

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in the CDTA Defendants' memoranda of law. (Dkt. No. 29, Attach. 8, at 9-12 [CDTA Defs.' Mem. of Law]; Dkt. No. 41, at 10-11 [CDTA Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

The CDTA is a public benefit corporation. N.Y. Pub. Auth. Law § 1303(1)(a). "Public benefit corporations are governmental entities for Section 1983's purposes." *McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 330 (E.D.N.Y. 2002). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

---

[6]    The Court notes that the CDTA is a public benefit corporation. N.Y. Pub. Auth. Law § 1303(1)(a). However, this does not mean that CDTA is automatically entitled to sovereign immunity as an arm of the state. *See Sulieman v. Roswell Park Cancer Inst.*, 05-CV-0766, 2008 WL 2690278, at *8 (W.D.N.Y. June 30, 2008) (stating that, "even if Roswell does qualify as a New York public benefit corporation, it does not, as a matter of federal law, thereby necessarily become an 'alter ego' or 'arm of the state' of New York for purposes of the Eleventh Amendment"). Accordingly, should this issue be re-raised on a future motion, the parties are invited to address whether the CDTA should be considered as an arm of the state that is entitled to Eleventh Amendment immunity. *See Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (applying two different tests for determining whether a government entity is an arm of the state for purposes of the Eleventh Amendment).

award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation marks omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits," Plaintiff must allege facts plausibly suggesting that Defendants, "through [their] own individual actions, [have] violated the Constitution." *Iqbal*, 556 U.S. at 676. Personal involvement may be demonstrated through evidence of one the five *Colon* factors. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

Furthermore, "[i]n the context of sexual harassment, inaction may be actionable, and a failure to promptly and properly respond to complaints may constitute personal involvement under anti-discrimination laws." *Kennedy*, 2016 WL 850910, at *9; *see also Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) ("If an employer is on notice of a likelihood that a particular employee's proclivities place other employees at unreasonable risk . . . the employer does not escape responsibility to warn or protect likely future victims merely because the abusive employee has not previously abused those particular employees"). "However, personal involvement is generally found only when the defendant had notice of the alleged misconduct and failed to act on that knowledge." *Kennedy*, 2016 WL 850910, at *9.

In the present case, the Court has already addressed the issue with regard to Defendant Mancini's direct participation in the sexual assault and, therefore, will not discuss it again here. With regard to the other supervisory Defendants, Plaintiff does not allege that Defendants Basile, Waxman, and Zarcone directly participated in the incident; rather, Plaintiff argues that they are liable under the third, fourth, and fifth *Colon* factors, i.e., because "[1] they condoned a custom of pervasive sexual harassment in the workplace; [2] they failed to appropriately supervise and train their employees regarding sexual harassment; and [3] they failed to discipline Defendants

Canton and Baez despite knowledge of repeated prior misconduct." (Dkt. No. 37, at 23 [Pl.'s Opp'n Mem. of Law].)  However, the Amended Complaint does not specifically allege that Defendants Basile, Waxman or Zarcone were aware, directly or indirectly, of any past misconduct or the incident in question.  Instead, the Amended Complaint alleges that "the above-listed defendants knew or should have known" about the past misconduct "given the pattern and practice of sexual conduct engaged in by Defendant Baez, and other CDTA employees, the highly publicized and successful lawsuits,[7] and harassment grievances filed against CDTA employees." (*Id.*, ¶ 39.)  These general allegations do not plausibly suggest that Defendants Basile, Waxman, and Zarcone had any knowledge of any constitutional violations.  *See Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 723 n.4 (S.D.N.Y. 2012) (dismissing complaint in part because allegations were made against defendants as a group, finding that "[i]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]"); *Elmer v. Fischer*, 09-CV-6505, 2013 WL 6628258, at *4 (W.D.N.Y. Dec. 16, 2013) (dismissing allegations against supervisors where plaintiff failed to attribute the alleged conduct to any particular defendant and therefore no personal involvement was alleged); *accord*, *Stamile v. Cty. of Nassau*, 10-CV-2632, 2014 WL 1236885, at *5 (E.D.N.Y. Mar. 25, 2014); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013).

Similarly, "[i]n order for a deliberate indifference claim to be viable, a plaintiff must allege that the supervisor was aware of facts from which the inference could be drawn that a

---

[7]     It should be noted that the Amended Complaint alleges that a jury returned a verdict against CDTA in 2002 regarding a complaint involving a woman who was sexually abused by a CDTA bus driver.  (Dkt. No. 22, ¶ 20 [Pl.'s Am. Compl.].)  There is no indication who this bus driver was or whether Defendants Basile, Waxman or Zarcone were employed by CDTA at the time or otherwise had knowledge of the lawsuit.

substantial risk of serious harm existed." *Stamile*, 2014 WL 1236885, at 6; *accord*, *Poe*, 282 F.3d at 142. Because Plaintiff has failed to allege facts plausibly suggesting that Defendants Basile, Waxman, and Zarcone were aware of any facts that would have made them aware of potential misconduct, these Defendants could not have been deliberately indifferent or grossly negligent regarding future misconduct.

Finally, Plaintiff has failed to allege facts plausibly suggesting that Defendants Basile, Waxman, and Zarcone created a policy or custom under which unconstitutional practices occurred. More specifically, the Amended Complaint alleges six incidents of prior misconduct. (Dkt. No. 22, ¶ 20 [Pl.'s Am. Compl.].) However, as the CDTA Defendants correctly note, the first three instances of misconduct are not alleged to have been reported to anyone at CDTA, supporting their argument that they were unaware of these events. With respect to the fifth instance of misconduct, the Amended Complaint alleges that CDTA employees filed harassment complaints against Defendant Baez in the past but that CDTA responded by taking disciplinary action against him. Therefore, the remaining two instances of misconduct do not plausibly suggest, in and of themselves, that Defendants Basile, Waxman, and Zarcone created a policy or custom in which constitutional violations were allowed to occur. *See Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (finding that the plaintiff showed "two instances, or at the most three" cases of unconstitutional conduct by a "small number of officers" that occurred "over a period of several years," which "fell far short of showing a policy, custom, or usage of officers" or conduct "so persistent that it must have been known to supervisory authorities"); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (stating that the plaintiff "identifie[d], at most, only four examples where the defendants might have disclosed positive drug test results,"

and holding that the "evidence [fell] far short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability") (citations and internal quotation marks omitted).

**G.    Whether Plaintiff's State Law Claims Should Be Dismissed for Failure to Serve a Timely Notice of Claim**

After carefully considering the matter, the Court answers this question in the affirmative for the three reasons set forth below.

First, having been presented with grounds to find that the information contained in the USPS tracking documentation and the date-stamped envelope submitted by the CDTA Defendants were integral to the Complaint, the Court issued a Text Order, dated May 10, 2016, *sua sponte* granting Plaintiff seven days to submit documentation substantiating his dispute regarding the accuracy of the information submitted by Defendants.  (Dkt. No. 42.)  In response, Plaintiff submitted a purchase receipt from a USPS store, dated February 5, 2014, purporting to establish that he had mailed his notice of claim from Atlanta, Georgia, on the 90th day after the incident occurred.  (Dkt. No. 43, Attach. 1 [Purchase Receipt].)  In reply to this supplemental response, Defendants have challenged the authenticity of the receipt, arguing that Plaintiff did not file an affidavit from someone with personal knowledge of its purchase.  (Dkt. No. 47 [Defs.' Letter Br.].)  Similarly, Defendants argue that the receipt does not contain the tracking number or other information related to the mailing of the notice of claim and, therefore, there is no proof that the receipt "actually is what it purports to be" (i.e., that the receipt itself reflects the purchase of postage used to mail the notice of claim).  (*Id.* at 2.)  The Court has carefully reviewed the receipt and agrees with Defendants that it cannot properly consider it as integral to the Complaint because there is a dispute regarding its authenticity.  *See Faulkner v. Beer*, 463

F.3d 130, 134 (2d Cir. 2006) (noting that the record must be clear that no disputes regarding authenticity exist before documents outside of the complaint may be considered on a motion to dismiss); *see also Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 415 (S.D.N.Y. 2010) ("The Court will not consider those documents submitted by Defendants that are not subject to judicial notice because there are disputes, even if of questionable viability, regarding the authenticity of these documents").

Second, even if the Court could properly consider the purchase receipt, the notice of claim would appear untimely. More specifically, N.Y. Gen. Mun. Law § 50-e states that service will be "complete upon deposit of the notice of claim . . . in a post office or official depository under the exclusive care and custody of the United States post office department *within the state*." N.Y. Gen. Mun. Law § 50-e(3)(b) (emphasis added). As stated above, the purchase receipt is from a post office outside of New York State. Under such circumstances, N.Y. Gen. Mun. Law § 50-e(3)(c) dictates that service will still be valid "if the notice is *actually received* by a proper person *within the time specified by this section*." (Emphasis added). However, the USPS tracking information submitted by Defendants establishes that the notice of claim was not received until February 11, 2014, which is approximately 96 days after the incident occurred. (Dkt. No. 29, Attach. 6, at 2 [USPS Tracking Info.].)[8]

---

[8]     The Court notes that Plaintiff filed a response (without leave of this Court) to Defendants' supplemental response arguing that, because a N.Y. Gen. Mun. Law § 50-h hearing was held, Defendants effectively waived an argument regarding any defect in the manner of service of the notice of claim pursuant to N.Y. Gen. Mun. Law § 50-e(3)(c). (Dkt. No. 48, at 1 [Pl.'s Letter Br. dated May 18, 2016].) Plaintiff also attached the first page of the 50-h transcript. Plaintiff neglects to explain how this document is integral to or incorporated by reference in the Complaint. (*Id.*) Notwithstanding this omission, even if the Court could properly consider this document (and argument), the Court is unpersuaded that this would change the outcome. Specifically, N.Y. Gen. Mun. Law § 50-e(3)(c) states that, "*[i]f the notice*

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999); *see also Raus v. Town of Southampton, N.Y.*, 13-CV-7056, 2015 WL 2378974, at *5 (E.D.N.Y. May 18, 2015) (finding notice of claim untimely when it was served 91 days after the claim arose). Nor does this Court have the authority to consider a motion for leave to file a late notice of claim. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) (collecting cases). Accordingly, because the notice of claim is untimely, Plaintiff's state law claims, with the exception of his NYSHRL claim, are dismissed. *See Anderson v. City of New York*, 06-CV-5726, 2012 WL 6720694, at *6 (E.D.N.Y. Dec. 27, 2012) (stating that "the weight of authority within this Circuit holds that [N.Y. Gen. Mun. Law] § 50-e is limited on its face to claims founded in tort, and therefore cannot apply to employment discrimination claims brought under [NYSHRL] § 296") (collecting cases).

Third, and finally, to the extent that it can be argued that a notice of claim is not required in order to pursue state law claims against Defendants in their individual capacities, these claims are likely barred by the applicable one-year statute of limitations. More specifically, "service of a notice of claim is not a condition precedent to the commencement of an action against a [municipality's] employees or agents unless the [municipality] is required to indemnify the

---

*is served within the period specified by this section*, but in a manner not in compliance with the provisions of this subdivision, service shall be valid if the public corporation against which the claim is made demands that the claimant . . . be examined in regard to it[.]" (Emphasis added). Here, Plaintiff has failed to establish the condition precedent stated in this rule (i.e., that the notice of claim was served within 90 days) in order to avail himself of the language that follows regarding waiver of defective service when an examination of the claimant is held.

individual defendants." *Costabile v. Cty. of Westchester, N.Y.*, 485 F. Supp. 2d 424, 432 (S.D.N.Y. 2007). "The [municipality's] duty to indemnify these employees turns on whether they were acting within the scope of their employment." *McCluskey v. Town of Southampton*, 12-CV-2394, 2013 WL 4049525, at *14 (E.D.N.Y. Aug. 9, 2013). In light of the Court's determination that Defendant Clanton was engaged in a personal pursuit at the time of the incident and, therefore, was not acting within the scope of his employment, it would be plausible that Plaintiff's fifth and sixth causes of action would survive as against him (and likely Defendant Baez as well) notwithstanding Plaintiff's failure to serve a timely notice of claim. However, N.Y. C.P.L.R. § 215(3) requires that actions for assault and battery be commenced within one year. This limitations period applies to intentional infliction of emotional distress as well. *Imperato v. Ostego Cty. Sheriff's Dep't*, 13-CV-1594, 2016 WL 1466545, at *24 (N.D.N.Y. Apr. 14, 2016) (Sannes, J.). The Amended Complaint alleges that Plaintiff was sexually assaulted on November 7, 2013, but this action was not commenced until February 5, 2015. Therefore, even if Plaintiff's fifth and sixth causes of action could be asserted against Defendants in their individual capacities, they would still be time-barred by the applicable statute of limitations.

### H. Plaintiff's Seventh Cause of Action for Negligent Supervision/Retention and Prima Facie Tort

As discussed in Part II.A.2. of this Decision and Order, Plaintiff consents to the dismissal of this cause of action. Therefore, Plaintiff's seventh cause of action is dismissed pursuant to Fed. R. Civ. P. 41(a)(2).

**ACCORDINGLY,** it is

**ORDERED** that Defendants' respective motions to dismiss Plaintiff's Complaint (Dkt. Nos. 27, 29) are **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part; and it is further

**ORDERED** that Plaintiff's First Cause of Action is **DISMISSED** as against Defendant Clanton; and it is further

**ORDERED** that Plaintiff's Second Cause of Action is **DISMISSED** in its entirety; and it is further

**ORDERED** that Plaintiff's Third Cause of Action is **DISMISSED** as against Defendants Basile, Waxman, and Zarcone; and it is further

**ORDERED** that Plaintiff's Fifth, Sixth, and Seventh Causes of Action are **DISMISSED** in their entirety; and it is further

**ORDERED** that **SURVIVING** Defendants' motions are the following three claims:

1. Plaintiff's First Cause of Action against Defendants Baez and Mancini;

2. Plaintiff's Third Cause of Action against Defendants CDTA and Mancini; and

3. Plaintiff's Fourth Cause of Action against Defendants CDTA, Baez, and Clanton;

and it is further

**ORDERED** that Defendants CDTA, Baez, Mancini and Clanton file an answer to the Plaintiff's Complaint within fourteen (14) days of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a), and this case is referred back to Magistrate Judge Hummel for a Rule 16 conference and the setting of pretrial scheduling deadlines.

Dated: July 19 , 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge