**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

KEVIN HOIT,

                  Plaintiff,

      v.                                                         No. 15-CV-134
                                                                   (CFH)

CAPITAL DISTRICT TRANSPORTATION
AUTHORITY et al.,

                  Defendant.

---

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                                      **OF COUNSEL:**

Law Offices of Elmer Robert Keach, III, P.C.     ELMER R. KEACH, III., ESQ.
One Pine West Plaza, Suite 109                       MARIA K. DYSON, ESQ.
Albany, New York 12205
Attorneys for plaintiff

## MEMORANDUM-DECISION AND ORDER[1]

Kevin Hoit ("plaintiff") commenced this civil rights action against Capital District Transportation Authority ("CDTA"), Carm Basile, Steve Waxman, Lance Zarcone, Tony Clanton, Frank Mancini, and Juan Baez ("Baez"). Dkt. No. 1. On April 1, 2015, a proof of service was filed, indicating that defendant Juan Baez was personally served on March 31, 2015. Dkt. No. 7. Defendant Baez failed to serve an answer to the complaint.

On April 29, 2015, defendants CDTA, Carm Basile, Steve Waxman, and Lance Zarcone filed a motion to dismiss. Dkt. No. 18. On May 18, 2015, plaintiff filed an amended

---

[1] Parties consented to the undersigned's jurisdiction of this Action in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Dkt. Nos. 77, 78.

complaint. Dkt. No. 22. On June 12, 2015, defendants Tony Clanton and Frank Mancini filed a motion to dismiss. Dkt No. 27. On July 19, 2016, this Court issued a Decision and Order, which, among other things, dismissed all of plaintiff's claims against defendants Basile, Waxman, and Zarcone. See generally Dkt. No. 51.

On July 25, 2016, defendants Tony Clanton and Frank Mancini filed an answer to the amended complaint. Dkt. No. 53. On July 29, 2016, defendant CDTA filed an answer to the amended complaint. Dkt No. 55. Defendant Baez did not serve an answer to the amended complaint.

On August 31, 2017, defendants Clanton and Mancini filed a motion for summary judgment. Dkt. No. 79. On that same day, defendant CDTA filed a motion for summary judgment. Dkt. No. 81. On November 1, 2017, plaintiff filed a motion seeking leave to file a second amended complaint. Dkt. No. 88. On May 22, 2018, this Court issued a Memorandum-Decision and Order, which, among other things, (1) granted defendant CDTA's motion for summary judgment; (2) granted Clanton and Mancini's motion for summary judgment; and (3) denied plaintiff's motion for leave to serve a second amended complaint. Dkt No. 99. As a result of that Memorandum-Decision and Order, Juan Baez is the sole remaining defendant in this action. See id.

On June 28, 2018 plaintiff, in accordance with Rule 55(a) of the Federal Rules of Civil Procedure ("Fed .R. Civ. P."), filed a request for the Clerk of the Court to enter a default against Baez. Dkt. No. 102. The next day, the Clerk of the Court entered a default against defendant Baez. Dkt. No. 103. On August 10, 2018, plaintiff filed a motion for default judgment against defendant Baez. Dkt. No. 105. Defendant Baez did not file a response to that motion. On September 11, 2018, the Court issued an order granting a default judgment

against Baez. Dkt. No. 107. The Order further provided that the Court would schedule a damages hearing pursuant to Fed. R. Civ. P. 55 (b)(2). Id. at 1. On September 11, 2018, the Court scheduled a hearing on the issue of damages for October 1, 2018. Dkt. No. 108. The damages hearing was conducted on that day. On October 9, 2018, plaintiff filed a post-hearing brief in support of plaintiff's claim for damages. Dkt. No. 111. In that brief, plaintiff requested that he be awarded $150,000 in compensatory damages and $50,000 in punitive damages. See id. at 6.

**I. Hearing Testimony**

**A. Kevin Hoit**

On November 7, 2013, plaintiff testified that he was employed by the CDTA as a mechanic. Dkt. No. 113 at 10. Plaintiff's supervisors were defendants Baez and Frank Mancini. Id.

Plaintiff's last day of work with the CDTA was November 7, 2013. Dkt. No. 113 at 11. Plaintiff testified that while he was changing an air compressor belt, Tony Clanton, a coworker, "grabbed hold of [him] and threw [him] to the ground and started dry humpin [him] . . . ." Id. Baez "came over and rested his testicles on top of [plaintiff's] head and pulled his pants down." Id. Plaintiff testified that Baez then grinded his testicles on top of plaintiff's head. Id. at 11-12. During the hearing, plaintiff's attorney introduced a photograph as Exhibit A, which depicted Frank Mancini holding a camera. Id. At 12. The photograph also showed Tony Clanton holding plaintiff down, as well as Baez, who was wearing a light blue shirt and gray underpants and putting his testicles of plaintiff's head. Id. at 12-13. Plaintiff testified that

3

he was angered by the Clanton and Baez's behavior, and fought to get away from them. Id. at 13. When plaintiff was able to stand up, he was "angry" and "really upset." Id. at 14.

Plaintiff remained at work until he finished his shift at 11:30 p.m. Dkt. No. 113 at 14. He testified that he was "angry" and "embarrassed" for the remainder of the entire day. Id. at 14-15. The following day, an individual texted a copy of the photograph of the incident to plaintiff. Id. at 15. Plaintiff later learned that a bus driver in New York City had told plaintiff's stepfather, Dennis Dugan, that he had seen the photograph. Id. at 15-16.

Plaintiff testified that for at least a week after November 7, 2013, he continued to receive text messages and emails about the incident. Dkt. No. 113 at 16. Friends advised him that they had seen the picture and wanted to make sure he was all right. Id. at 16-17. Plaintiff testified that he was "humiliated, embarrassed, [and] just depressed" as a result of the incident. Id. at 17. He felt that way for "at least a year." Id.

Plaintiff saw John Allegreti-Freeman, a social worker therapist, on six occasions following this incident. Dkt. No. 113 at 18. He and Mr. Allegreti-Freeman worked on breathing techniques to address his anxiety. Id. Plaintiff also treated with his primary care doctor for his anxiety. Id. Dr. Hausler prescribed plaintiff Citalopram for his anxiety. Id. at 19-20. At present, he continues to take Citalopram. Id. at 21. He was later prescribed Nortriptyline to help him sleep. Id. Plaintiff took the Nortriptyline for a few months. Id.

Plaintiff testified that he continues to be "very hurt" and "embarrassed" by the events of November 7, 2013. Dkt. No. 113 at 21-22. He further testified that whenever he discusses the incident, it "[s]till gives [him] anxiety." Id. at 22.

4

### B. Dennis Dugan

Mr. Dugan is plaintiff's stepfather. Dkt. No. 113 at 23. He testified that he was married to plaintiff's mother from 1996 to around 2014. Id. He continues to be in contact with plaintiff at the present time. Id. Mr. Dugan was employed by CDTA from 1988 to late October 2013. Id. During that period, Mr. Dugan became the Superintendent of Maintenance and oversaw operations in different divisions. Id. at 24.

Mr. Dugan testified that he learned of the November 7, 2013 incident from former co-workers during the week following this event. Dkt. No. 113 at 25. Mr. Dugan's former co-workers informed him that, on plaintiff's last day of work, a couple of plaintiff's coworkers got "a little physical" with him as is depicted in Exhibit A. Id. A short time later, Mr. Dugan was approached by a former CDTA employe,e who was then working in New York City, and asked about the incident and how plaintiff was doing. Id. at 26.

Mr. Dugan testified that since this incident, plaintiff "seems more depressed" and less talkative. Dkt. No. 113 at 26. Whenever he attempted to speak to plaintiff about the incident, plaintiff would change the subject. Id. Mr. Dugan described plaintiff as "fidgety" and "very restless." Id. at 27.

### II. Trial Exhibits

### A. John Allegretti-Freeman, LCSW-R

The treatment records of John Allegretti-Freeman, LCSW-R were received in evidence as Exhibit D. See Tr. Ex. D at 1-6. The records demonstrate that Mr. Allegretti-Freeman first met with plaintiff on November 26, 2013 for a mental health assessment. Id. at 4-6. At that

assessment, plaintiff described the incident that occurred on his last day of work.  Id. at 4.  He was very concerned that a picture had been taken of the incident.  Id.

Mr. Allegretti-Freeman found plaintiff to be oriented as to time and location.  Tr. Ex. D at 5-6.  Plaintiff stated that he was anxious about the recent incident and concerned about his reputation.  Id. at 6.  Mr. Allegretti-Freeman believed plaintiff would benefit from developing stress management skills.  Id.  Mr. Allegretti-Freeman stated that he met with plaintiff on six occasions, and suggested plaintiff have a psychiatric/medical evaluation.  Id. at 3.  Plaintiff followed that recommendation and was prescribed medication by his treating physician.  Id.

Mr. Allegretti-Freeman's last treatment note is dated April 2, 2015.  Tr. Ex. D at 3.  At that time, plaintiff was taking prescribed medication.  Id.  Although plaintiff presented with a flat affect, Mr. Allegretti-Freeman stated that he did not have a longstanding relationship with plaintiff, and, therefore, was uncertain if that was his baseline functioning.  Id.  He described plaintiff as a cooperative patient, who was trying to use medication and different techniques to recognize and reduce his anxiety.  Id.

### B. Dr. Gerald Hausler D.O., F.A.A.F.P.

The treatment records of Dr. Hausler were received in evidence as Exhibit E.  See Tr. Ex. E at 1-7.  Dr. Hausler first saw plaintiff on March 5, 2014 for an evaluation.  Id. at 5.  Plaintiff described feeling "overwhelmed, anxious, [and] upset" as a result of the incident which occurred on his last day of work at CDTA.  Id.  Plaintiff was having difficulty sleeping.  Id.  Dr. Hauser believed plaintiff was depressed and might have PTSD.  Id.  He gave plaintiff a prescription for Citalopram.  Id.

6

Dr. Hausler next saw plaintiff on April 8, 2014. Tr. Ex. E at 4. Plaintiff, who had minimal improvement in his depression, was attending counseling with John Allegretti-Freeman. Id. Plaintiff's sleep patterns had improved. Id. Plaintiff's work environment at CSX, where he was employed, had also improved. Id. Dr. Hausler increased the dosage of plaintiff's prescription for Citalopram. Id.

Dr. Hausler next saw plaintiff on November 25, 2014. Tr. Ex. E at 3. At that time, plaintiff stated that he was doing well and sleeping better. Id. With the increased dosage of Citalopram, plainitff's anxiety level was down dramatically. Id. Dr. Hausler's records indicate he last saw plaintiff on March 25, 2015 for an evaluation of insomnia. Id. Plaintiff was still on Citalopram and was doing well. Id.

### III. Legal Analysis

"Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: 'garden-variety,' 'significant,' and 'egregious.'" Graham v. City of New York, 128 F. Supp. 3d 681, 714 (E.D.N.Y. 2015) (quoting Olsen v. Cty. of Nassau, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009)). "In 'garden-variety' emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." Barham v. Wal-Mart, Inc. et al., No. 3:12-CV-01361 (VAB), 2017 WL 3736702, at *2 (D. Conn. Aug. 30, 2017) (quoting Olsen, 615 F. Supp. 2d at 46) (internal quotation marks omitted). "Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration." Id. "Significant" emotional distress claims "are based on more substantial harm or more offensive conduct, are sometimes

7

supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." Id. at 3 (quoting Olsen, 615 F. Supp. 2d at 46-47). "Egregious" emotional distress claims generally involve "either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff." Id. (internal quotation marks omitted) (citing inter alia Thorsen v. Cty. of Nassau, 722 F. Supp. 2d 277, 292 (E.D.N.Y. 2010) ((emotional distress was not "garden variety" where plaintiff saw therapist twice weekly for six months, and both plaintiff and therapist testified at length regarding Plaintiff's anxiety and depression, physical symptoms, and "major stress attack" requiring hospitalization)).

Here, the record does not contain medical testimony corroborating the emotional distress which plaintiff claims he suffered. Plaintiff did put into evidence the treatment records of John Allegretti-Freeman, LCSW-R (Ex. D) and the records of his treating physician Dr. Hausler (Ex. E). See Tr. Ex. D and E. In November 2013, Mr. Allegretti-Freeman completed a mental health evaluation of plaintiff and suggested short-term counseling to address his anxiety. Tr. Ex. D at 406. In his April 2, 2014 report, Mr. Allegretti-Freeman noted that although plaintiff presented with a flat affect, he did not have a longstanding relationship with plaintiff, and was uncertain if that was plaintiff's baseline functioning. Id. at 3. At Mr. Allegretti-Freeman's recommendation, plaintiff saw his treating physician Dr. Hausler for a psychiatric/medical evaluation. Id.

Dr. Hausler saw plaintiff on four occasions following on the November 7, 2013 incident that CDTA. Tr. Ex. E. at 1-7. Plaintiff presented with overwhelming anxiety secondary to the physical assault which occurred at CDTA. Id. at 5. Dr. Hausler prescribed 20 mg of Citalopram to address plaintiff's anxiety. Id. Dr. Hausler later increased plaintiff prescription

8

for Citalopram to 40 mg. Id. at 4. The increased dosage of Citalopram helped plaintiff sleep better and dramatically reduced his anxiety. Id. at 3. When Dr. Hausler last saw plaintiff on March 25, 2015, he was still taking the Citalopram and doing well. Id. Plaintiff was having difficulty sleeping at that time. Id.

The Court concludes that, in consideration of all of the evidence introduced at trial, plaintiff has demonstrated emotional distress that falls between "garden-variety" emotional distress and "significant" emotional distress. See Abel v. Town Sports Int'l., Inc., No. 09 Civ. 10388(DF), 2012 WL 6720919 at *16 (S.D.N.Y. Dec. 18, 2012) (finding "garden variety" emotional distress where plaintiff offered evidence corroborated by other witnesses, that he was hurt, stressed, not himself, and gained weight); Thorsen, 722 F. Supp. 2d at 292 (concluding that the plaintiff's emotional distress was not "garden-variety" where the plaintiff saw a therapist twice weekly for six months, and there was extensive testimony from both plaintiff and therapist regarding plaintiff's anxiety and depression, physical symptoms and a "major stress attack" requiring hospitalization).

"In the Second Circuit, '[g]arden-variety emotional distress claims generally merit $30,000 to $125,000 towards.'" MacMillian v. Millennium Broadway Hotel, 873 F. Supp.2d 546, 561 (S.D.N.Y. 2012) (quoting Olsen, 615 F. Supp. 2d at 46) (quotation marks omitted); see also Patterson v. Balsamico, 440 F.3d 104, 120 (2d Cir. 2006) (upholding the jury's $100,000 compensatory damage award where "the plaintiff offered testimony of his humiliation, embarrassment, and loss of self-confidence, as well as testimony relating to his sleeplessness, headaches, [and] stomach pains[.]"); DeCurtis v. Upward Bound Int'l., Inc., No. 09 Civ. 5378(RJS), 2011 WL4549412 at *4 (S.D.N.Y. Sept. 27, 2011)("A review of the relevant case law in this jurisdiction reveals that plaintiffs with garden-variety claims generally

receive between $30,000 and $125,000.") (citation omitted).

In view of the evidence adduced at trial, plaintiff is awarded $110,000 in compensatory damages for all damages that he sustained as a result of the November 7, 2013 incident at CDTA. Given the testimony at trial, and the amount of the award of compensatory damages, plaintiff's request for an award of punitive damages is denied.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff is awarded the sum of $110,000 in compensatory damages against defendant Juan Baez; and it is further

**ORDERED**, that the Clerk of Court is directed to enter a judgment in plaintiff's favor against defendant Juan Baez in the amount of $110,000.

**IT IS SO ORDERED**.

Dated: December 18, 2018
Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge